United States District Court
Middle District of Florida
Orlando Division

**ROBIN PRICE,**

 *Plaintiff,*

v.                **NO. 6:20-cv-1742-PDB**

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

---

# Order

 Robin Price brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to challenge a final decision by the Acting Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Doc. 1. The decision under review is a decision by an Administrative Law Judge (ALJ). Tr. 15–26. The procedural history, administrative record, and law are summarized in the briefs, Docs. 25, 26, and not fully repeated here.

 A court's review of a decision by the Acting Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.* If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence

Case 6:20-cv-01742-PDB   Document 27   Filed 03/29/22   Page 2 of 18 PageID 1021

preponderates against the factual findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The ALJ found Price has severe impairments of fibromyalgia, arthritis, degenerative disc disease, and bipolar disorder. Tr. 17. He found she has the residual functional capacity (RFC) to perform light work with additional physical limitations. Tr. 19. Specifically, she must be able to sit or stand every 30 minutes; she can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; she can only occasionally balance, stoop, bend, kneel, crouch, and crawl; and she must have no concentrated exposure to extreme cold, wetness, or humidity, or to moving mechanical parts or unprotected heights. Tr. 19. The ALJ also found Price has mental limitations. Tr. 19. Specifically, she can have only occasional contact with the public and coworkers, though she can relate adequately to supervisors, and she can perform only work that requires little or no judgment and involves simple duties that can be learned on the job in a short time ("up to and including 30 days"), though she can deal with changes in a routine work setting. Tr. 19. Considering that RFC and other evidence, the ALJ found she can perform jobs that exist in significant numbers in the national economy and thus is not disabled. Tr. 24–25.

Price argues remand is warranted for two reasons.

First, Price argues the ALJ failed to provide sufficient justification for finding unpersuasive the opinion of Brian Patterson, M.D. Doc. 25 at 11–15. The opinion is in a "Residual Functional Capacity Form" dated November 10, 2017. Tr. 612–16. The form is unsigned but addressed to Dr. Patterson. Tr. 612. The form was completed with the following information.

Dr. Patterson sees Price for back pain three times a month. Tr. 612. She reports neck and back pain and describes the pain as throbbing, aching, stabbing, severe, and constant, even at rest, and she reports numbness. Tr. 612, 615. Her "credibility with regards to claims of pain" is "fair." Tr. 616. "Disc herniation" is an objective medical reason for the pain. Tr. 616. She underwent a lumbar spine CT on November 17, 2016, showing foraminal stenosis; a lumbar spine MRI on March 29, 2017, showing a disc bulge, a disc herniation, and an annular tear; and a cervical spine MRI on October 19, 2017, showing multi-level disc herniation and spondylosis. Tr. 612. Her diagnoses are "low back pain, spinal stenosis, lumbar region, other interve[r]tebral disc disorders lumbosacral region[,] other cervical disc disorders, high cervical region." Tr. 612. She was prescribed Lidoderm (five percent) and adhesive patches and "instructed to follow[]up with pain management for possible injections." Tr. 613. Her impairments are expected to last more than a year. Tr. 613. Her prognosis is "life long pain," Tr. 613, and her diagnosis is unlikely to change, Tr. 616.

Price's disc herniation and back pain cause limitations: she cannot stand for six to eight hours, she can stand for only ten to fifteen minutes an hour or "as tolerated," and she can sit for only thirty minutes an hour or "as tolerated." Tr. 613. She must lie down during the day to remove pressure from her back. Tr. 614. How far she can walk without stopping is "unknown." Tr. 614. She can rarely (15 percent of the time) reach up above her shoulders, reach down to her waist level, reach down toward the floor, and carefully handle objects, but she can consistently (100 percent of the time) handle with her fingers. Tr. 614. She can lift and carry less than five pounds regularly, including during an eight-hour workday. Tr. 614. Her impairments prevent her "from performing certain motions, such as lifting, pulling, holding objects, etc." Tr. 615. Her impairments cause her difficulty bending (her range of motion is fifty degrees) and turning

3

any parts of her body (her range of motion is twenty degrees) but cause no difficulty squatting or kneeling. Tr. 615. Whether her impairments would prevent her from traveling alone is "unknown." Tr. 615.

Her "current employment [is] unknown." Tr. 616. Thus, no answer is given to the questions, "Given your experience with the patient, your diagnosis, and the patient's disability or impairment, do you believe he or she could continue or resume work at current or previous employment?" and "When would you expect the patient to be able to return to work, with and/or without any restrictions?" Tr. 616.

Addressing the form, the ALJ stated, "On November 20 [sic], 2017, an unsigned, [RFC] form was submitted. It appears that Dr. Patterson could have submitted the form." Tr. 23. The ALJ summarized the information on the form. *See* Tr. 23. The ALJ found, "This opinion is not persuasive because it is internally inconsistent. The author said the claimant's credibility regarding pain was fair, which is inconsistent with the opined work preclusive limitations. This opinion is inconsistent with the clinical exams, objective imaging studies and course of treatment for physical impairments." Tr. 23 (citing Exs. C2F/5, 13; C3F/15; C4F/6; C7F/5, 29, 33, 35; C12F/15; C22F/146).

Elsewhere in the decision, the ALJ summarized the cited exhibits as follows:

> A CT of the lumbar spine done on November 17, 2016 revealed a suspected left foraminal disc herniation at the L3-L4 level which could affect the exiting left L3 nerve root and spondylosis resulting in advanced neural foraminal stenosis at the L5-S1 level, worse on the left which could affect the exiting L5 nerve root. (Ex. C2F/5)
>
> On March 6, 2017, the claimant had a new patient appointment with Brian Patterson, MD. Ms. Price reported lower back pain with numbness, tingling, weakness, swelling and stiffness. She said she was currently working. The mental status exam was normal. The exam of

4

the lumbar spine revealed palpable generalized tenderness. The claimant had reduced range of motion. The claimant had full strength in all muscle groups tested. The straight leg raise was positive in the left leg. The exam of the upper extremities was normal. (Ex. C2F/13)

An MRI of the lumbar spine done on March 29, 2017 revealed mild multilevel degenerative changes. (Ex. C3F/15)

…

X-rays of the cervical spine done on August 8, 2017 revealed minimal discogenic spondylosis at C6-7 with anterior spurring. (Ex. C4F/6)

…

An MRI of the cervical spine done on October 19, 2017 revealed multilevel degenerative change of the cervical spine and moderate neural foraminal stenosis at right C5-C6. (Ex. C12F/15)

X-rays of the right knee done on October 19, 2017 revealed mild degenerative change. (Ex. C7F/29)

X-rays of the lumbar spine done on October 19, 2017 revealed mild lumbar spondylosis. (Ex. C7F/33)

X-rays of the left knee done on October 19, 2017 revealed mild degenerative change. (Ex. C7F/35)

On November 6, 2017, the claimant had a follow up appointment with Abdul Aziz, MD, who is a rheumatologist. Dr. Aziz noted stiff movement of the shoulder joints bilaterally. There was crepitus in the knees. The claimant had four of 18 fibromyalgia tender points. The claimant had good motor power. Dr. Aziz noted that the claimant's anti-centromere antibody was positive, but her rheumatoid factor was negative. Dr. Aziz diagnosed the claimant with polyarthritis and osteoarthritis of the joints. (Ex. C7F/5)

…

On February 5, 2019, the claimant had a primary care appointment with Marcelo Anayas, MD. The claimant reported joint pain, joint swelling, morning stiffness and urinary urgency. Ms. Price was in no acute distress. She was cooperative. She was appropriately groomed. The claimant had moderate, generalized tenderness in the cervical spine and in the lumbar spine. The claimant had moderate, localized tenderness over the ulnar aspect and the volar aspect of the right wrist. Dr. Anayas

> advised the claimant to resume physical therapy as prescribed by her rheumatologist. Dr. Anayas referred the claimant to an urologist. (Ex. C22F/146)

Tr. 20–22.

In 2017, the Social Security Administration (SSA) revised its medical evidence rules. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revisions include redefining terms related to evidence; revising how the agency considers medical opinions and prior administrative medical findings; and revising rules about treating sources, acceptable medical sources, and medical and psychological consultants. *Id.* The final rules became effective on March 27, 2017. *Id.* They apply here.

The SSA no longer uses the term "treating source" and will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the SSA will evaluate the persuasiveness of a medical opinion from a medical source considering, as appropriate, "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." *Id.* §§ 404.1520c(a) & (c)(1)–(5), 416.920c(a) & (c)(1)–(5).

Supportability and consistency "are the most important factors" in determining the persuasiveness of a medical source's medical opinion or prior administrative findings. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Because they are the most important factors, the SSA will explain in the decision "how [it]

considered the supportability and consistency factors for a medical source's medical opinions." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

As to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ followed the regulations by explaining why Dr. Patterson's opinion is unpersuasive, focusing on supportability and consistency: "This opinion is not persuasive because it is internally inconsistent. The author said the claimant's credibility regarding pain was fair, which is inconsistent with the opined work preclusive limitations. This opinion is inconsistent with the clinical exams, objective imaging studies and course of treatment for physical impairments." *See* Tr. 23 (quoted) (citing Exs. C2F/5, 13, C3F/15, C4F/6 C7F/5, 29, 33, 35, C12F/15, C22F/146).

Contrary to Price's argument, substantial evidence supports the ALJ's reasoning. On the ALJ's first reason for finding the opinion unpersuasive, a reasonable mind might accept that limitations giving full effect to a patient's descriptions of pain are inconsistent with a finding that the patient's credibility on pain is only "fair." On the second reason, a reasonable mind might accept that finding limitations precluding all work is inconsistent with medical records with mostly mild to moderate findings and that findings she can rarely reach up above her shoulders, reach down to her waist level, reach down

7

toward the floor, and carefully handle objects and can lift and carry less than five pounds regularly, Tr. 614, are inconsistent with Dr. Patterson's records from the same year showing she had full strength in all tested muscle groups, Tr. 398, and a normal examination of her upper extremities, Tr. 392. *See* Tr. 20–21, 23 (ALJ's discussion).

Price contends, "In this context, the word 'fair' means 'of acceptable or average quality.' … By stating that Plaintiff had 'fair' or acceptable credibility, the doctor concluded Plaintiff's complaints of pain were worthy of belief." Doc. 25 at 12–13 (quoting *Fair*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/fair). Price continues, "In addition, Dr. Patterson specifically noted that the objective medical findings were consistent with the pain that [Price] described." Doc. 13 (citing Tr. 615).

These contentions are unpersuasive. In the opinion, the author failed to define "fair." *See* Tr. 616. The complete dictionary definition includes, "not very good or very bad: of average or acceptable quality" and "sufficient but not ample: adequate." *See Fair*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/fair (capitalization omitted) (last visited March 29, 2022). The author failed to use a stronger description more apt for limitations giving full effect to Price's descriptions of pain. That the author answered, "disc herniation," to the question, "Is there an objective medical reason for the pain," Tr. 616, does not necessarily mean he found her claims of pain compelling. In any event, the ALJ provided another, independent reason for finding the opinion unpersuasive.

Price contends "the treatment notes that the ALJ cited actually support Dr. Patterson's conclusion that [she] has severe functional limitations." Doc. 25 at 13. According to Price, "In short, the medical evidence revealed that [Price] had lumbar spine pain that radiated to her lower extremities as well as

8

joint pain and tenderness due to rheumatoid arthritis. Therefore, it was reasonable for Dr. Patterson to find that [she] could not sit or stand for prolonged periods of time and could not lift more than 5 pounds occasionally." Doc. 25 at 14. But whether some evidence could have supported a finding that the opinion was persuasive is not the issue. That the ALJ explained why the opinion is unpersuasive and substantial evidence supports his reasoning suffices.

Price contends, "The ALJ provided no analysis as to how the evidence was inconsistent with Dr. Patterson's opinion." Doc. 25 at 14. To the contrary, by citing the exhibits on which he was relying to find the opinion unpersuasive and by summarizing the information in those exhibits elsewhere in the opinion, the ALJ adequately explained the finding. In an already lengthy decision, the ALJ had no obligation to provide more.

Thus, Price's first argument fails.

Price next argues the ALJ provided insufficient justification for rejecting her testimony about her pain and functional limitations. Doc. 25 at 15–21.

The ALJ summarized Price's testimony as follows:

The claimant testified that she has not worked since November 2016. Ms. Price said she has been selling things on Facebook, and she said she takes her daughter to the flea market. The claimant said she could not work because of back pain that spreads down her muscles. She said she has pain and weakness. She said that some days, she is paralyzed on her left side. She said her pain is usually 6/10. The claimant said that Tylenol helps her shoulder pain. She said that stronger prescription drugs only make her tired. The claimant said she could stand for 15-30 minutes. She said she could walk slowly for 15 minutes. Ms. Price said she could sit for 15-30 minutes. She said she could not lift and carry more than five pounds. The claimant said she tries to do things around the house. She said she could not do an entire sink full of dishes, and she said she could not sweep an entire floor. The claimant said she could

9

> drive for 30 minutes. She said she lives with her mother and her daughter, and her daughter helps with the cooking. Ms. Price said she could prepare basic things. She said she could not do her hair, and her daughter does it for her. The claimant said she could help with laundry and shopping.
>
> When questioned by her attorney, Ms. Price said that she has pain, headaches and muscle weakness. She said that she could not do her hair because of a lack of mobility in her shoulders and because of her neck. The claimant said her knees hurt, and the left one buckles. She said she has been using a cane for five years. The claimant said she has fibromyalgia fog, and she becomes confused and loses her train of thought. The claimant said she has to go to the bathroom every 30 minutes. The claimant said she is depressed, and she cries all the time. She said her medication helps some. The claimant said she could not return to her work at the flea market because she has issues with people being close to her. She said she could not lift heavy boxes. She said she could not find things to sell because she could not pick up and carry things that "pull money."

Tr. 19–20.

The ALJ found, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. The ALJ continued, "As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the medical evidence of record as summarized herein." Tr. 20.

The ALJ summarized the medical evidence as follows (in addition to the medical evidence quoted above):

> On July 21, 2017, the claimant told a physician's assistant that she was disabled but working at the flea market. (Ex. C3F/5)

10

On August 14, 2017, the claimant had a follow up appointment with Dr. Patterson. The claimant said her back pain was moderate to severe. She said that prolonged sitting and prolonged walking made her pain worse. The mental status exam was normal. The exam of the spine revealed reduced range of motion and palpable generalized tenderness. The straight leg raise was positive bilaterally. The claimant experienced numbness in the left leg. The exam of the upper extremities was normal. (Ex. C2F/7)

On October 18, 2017, the claimant participated in a psychiatric evaluation with Lynval Parke, ARNP. The claimant was appropriately dressed and groomed. She made appropriate eye contact. Her memory, attention span and concentration were intact. Her gait was stable. Her affect was euthymic. Her judgment and insight were good. Mr. Parke increased the claimant's dosage of Cymbalta and advised her to return in one month. On November 15, 2017, the claimant told Mr. Parke that her medications were working better. (Ex. C14F)

X-rays of the cervical spine done on October 19, 2017 revealed degenerative disc disease at C5-6 and C6-7. (Ex. C7F/15)

On February 12, 2018, the claimant had a medication management appointment with Carmen Sanz, MD. The claimant said she felt fine and leveled. She denied having any mood swings. The claimant was appropriately dressed and groomed. Her gait was stable. She was cooperative. Her memory, attention and concentration were intact. Her mood was euthymic, and her affect was good. She had good judgment and insight. Dr. Sanz diagnosed the claimant with bipolar disorder. Dr. Sanz adjusted the claimant's medication and advised her to follow up in three months. (Ex. C16F/9)

On May 24, 2018, the claimant had an initial visit with Waleed Bolad, MD, who is a rheumatologist. The claimant reported worsening pain in her back, shoulders, arms, hips and knees. She said she took Cymbalta for depression and it helped her myalgia. The claimant said she felt stiff all over for two hours every morning. Dr. Bolad reviewed the claimant's lab studies and imaging studies. The claimant was in no acute distress. There was positive PIP tenderness and bilateral wrist tenderness. There was positive paravertebral spine tenderness. There was positive trochanteric tenderness and positive knee crepitus. The claimant had 18 positive fibromyalgia tender points. Dr. Bolad diagnosed the claimant with fibromyalgia. (Ex. C17F/8)

On August 9, 2018, the claimant had a medication management appointment with Dr. Sanz. The claimant said she went to Tennessee and had a "rough trip," but she managed it. The claimant said her energy level was within normal limits. The claimant denied having

11

problems with focus and concentration. The claimant was appropriately dressed and groomed. She made appropriate eye contact. She was cooperative, and her attitude was appropriate. Her attention span, concentration and memory were intact. Her mood was euthymic. Dr. Sanz noted that the claimant had been functioning well and had been stable since January 2017. Dr. Sanz wrote that the claimant was tolerating her medication well. Dr. Sanz diagnosed the claimant with a bipolar disorder in partial remission. (Ex. C20F/15)

On November 18, 2017, the claimant participated in a psychiatric evaluation with N. Kirmani, MD. In addition to physical problems, the claimant reported being disabled because of anxiety and depression. The claimant drove herself to the evaluation. She was appropriately dressed and groomed. The claimant said she last worked in 2016 when she worked at a flea market. The claimant said she lived with her mother and with her 17-year-old daughter. The claimant said she went to the store with her daughter. Ms. Price said she could prepare simple meals and follow simple recipes. She said she could do light housework such as washing the dishes and light cleaning. The claimant said she watched six to eight hours of TV a day. She said she enjoyed watching movies. The claimant said she could manage money and pay bills online. She said she enjoyed reading books about the supernatural. The claimant said she enjoyed visiting with her family, and she said she talked to neighbors. The claimant said she was independent in activities of daily living, but she said her daughter occasionally assisted her with her hair. The claimant's mood was euthymic, and her affect was within full range. Dr. Kirmani diagnosed the claimant with anxiety and depression by history. Dr. Kirmani opined that the claimant could make some personal and social adjustments. He opined that the claimant could understand, remember and carry out instructions. (Ex. C15F)

On December 7, 2017, Jane Cormier, Ph.D., who is a consultant for DDS, reviewed the medical evidence of record and concluded that the claimant has non-severe affective and anxiety disorders. On February 13, 2018, Alicia Maki, Ph.D., a consultant for DDS, reviewed the medical evidence of record and affirmed the initial determination. (Exs. C5A, C9A)

Tr. 20–23 (excluding opinions the ALJ found unpersuasive).

The ALJ stated the RFC was based on this evidence. Tr. 23. He found the RFC was "supported by the medical evidence of record, some of the opinions, and the following factors":

> Although the claimant alleges that she is disabled and unable to work, she engaged in activities during the period under adjudication that are consistent with the ability to perform a reduced range of light work as described in the residual functional capacity. On March 6, 2017, the claimant told Dr. Patterson that she was working, (Ex. C2F/13). On July 21, 2017, the claimant told a physician's assistant that she was disabled but working at the flea market, (Ex. C3F/5). On August 9, 2018, the claimant told Dr. Sanz that she had recently traveled to Tennessee, (Ex. C20F/15).
>
> The clinical exams, objective imaging studies, and course of treatment are inconsistent with the work preclusive symptoms and limitations that the claimant alleges. See Exs. C2F/5, 13, C3F/15, C4F/6 C7F/5, 29, 33, 35, C12F/15, C22F/146. The record as a whole supports the finding that the claimant can perform a reduced range of light work as described in the residual functional capacity.
>
> The claimant interacted effectively and appropriately with medical personnel. She had no difficulty describing her symptoms. Her mental status exams were normal. See Exs. C2F/7, 13, C14F, C16F/9, C22F/146. The claimant received minimal and conservative mental health treatment. Her mental status exams were normal, and she reported that her medication was effective. See Exs. C14F, C16F/9. On August 9, 2018, Dr. Sanz noted that the claimant had been functioning well and had been stable since January 2017, (Ex. C20F/15). The record as a whole supports the finding that the claimant can perform unskilled work as described in the residual functional capacity.

Tr. 23–24.

To determine disability, the SSA considers symptoms, including pain, and the extent to which the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Statements about symptoms alone cannot establish disability. *Id.* §§ 404.1529(a), (b); 416.929(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce" the symptoms and, when considered

13

with the other evidence, would lead to a finding of disability. *Id.* §§ 404.1529(a), (b); 416.929(a), (b).

The finding that an impairment could reasonably be expected to produce the symptoms does not involve a finding on the intensity, persistence, or functionally limiting effects of the symptoms. *Id.* §§ 404.1529(b), 416.929(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. *Id.* §§ 404.1529(a), (c); 416.929(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions. . . can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the symptoms affect the ability to work. *Id.* §§ 404.1529(a), 416.929(a).

Factors relevant to symptoms include daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the symptoms; treatment for the symptoms other than medication; and measures used to relieve the symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

To determine the extent to which symptoms affect a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the symptoms; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* §§ 404.1529(c)(4), 416.929(c)(4).

14

Effective March 28, 2016, Social Security Ruling (SSR) 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.*

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ articulated explicit and adequate reasons for rejecting Price's testimony about symptoms and limitations: she engaged in activities consistent with the ability to perform light work with additional limitations; the "clinical exams, objective imaging studies, and course of treatment are inconsistent with the work preclusive symptoms and limitations" she alleges; and the "record as a whole" supports that she can perform light work with additional limitations. Tr. 23–24.

Substantial evidence supports those reasons. A reasonable mind might accept that working at a flea market and traveling out of state are inconsistent with disability and an inability to work. A reasonable mind might accept that the medical evidence summarized by the ALJ above is inconsistent with disability and an inability to work. And the record as a whole adequately supports the finding Price can perform light work with additional limitations. As the ALJ explained, the record includes evidence that Price interacted effectively and appropriately with medical personnel, had no difficulty describing her symptoms, had normal mental status exams, received minimal and conservative mental health treatment, and reported that her medication

was effective. Tr. 24; *see, e.g.*, Tr. 392, 398, 622–23, 625, 640, 868 (normal mental status exams); Tr. 626 (psychiatric treatment note showing Price reported "her medications are working better" (capitalization omitted)).

Price argues that although the ALJ stated that she told Dr. Patterson she was working, the record shows only that Dr. Patterson wrote she is "currently working." Doc. 25 at 17–18 (citing Tr. 397). Price continues, "In any event, the doctor's statement plainly was erroneous. Plaintiff's earnings records reflect that she did not have any income after her alleged onset date of November 11, 2016. The ALJ also made a finding of fact that Plaintiff had not engaged in substantial gainful activity since her alleged onset date." Doc. 25 at 18 (citing Tr. 17, 283–88). According to Price, "Since there was no evidence showing that [she] worked after applying for disability and since the ALJ accepted that [she] had not engaged in any substantial gainful activity, the ALJ should not have given any weight to Dr. Patterson's unexplained assertion that [she] was 'currently working.'" Doc. 25 at 18. Price also emphasizes her testimony about her work at the flea market and complains "[t]he ALJ failed to acknowledge that most of the work at the flea market was performed by [her] daughter." Doc. 25 at 18–19.

Price's arguments are unpersuasive. The regulations provide, "Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." 20 C.F.R. §§ 404.1571, 416.971. The medical record from Dr. Patterson is based on a visit on March 6, 2017, and includes this line under a section on "Medical History": "**Personal and Social History**: She does not smoke. She does not use alcohol. She is single. She is currently working." Tr. 397. Considering the context of this statement, the ALJ reasonably inferred that Price told Dr. Patterson this personal information, including that she was currently working. The inference

16

is consistent with the statement in another report from a few months later, "**SOCIAL HISTORY:** She is disabled. She does work at the flea market. She is a never smoker. Does not drink alcohol. Single. Has a 16 year old daughter." Tr. 404. The inference is not inconsistent with the ALJ's finding she had not engaged in substantial gainful activity since November 11, 2016, because "substantial gainful activity" has a specific legal meaning. Substantial gainful activity is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. A person can work in a way that does not amount to substantial gainful activity. Regarding the flea market, Price testified she could not work without her daughter's help because she cannot lift moneymakers like electronics and furniture set on curbs and a person cannot leave the booth unattended to use the restroom or wares will get stolen. Tr. 48–49. A reasonable mind might accept that performing work of any kind, even work shy of substantial gainful activity and even work with a partner, cuts against a disability finding.

Price points to her statements about needing help to perform activities of daily living and to some of the many medical records and contends the evidence supports her position she is disabled and unable to work. Doc. 25 at 19–20 (citing Tr. 40–41, 389–90, 392, 395, 397, 473). As the ALJ stated, Price told Dr. Kirmani that she drove to the appointment, could go to the store with her daughter, visited family and talked to neighbors, prepared simple meals and followed simple recipes, did light housework, enjoyed watching movies and reading books, and managed money and paid bills online. Tr. 22–23, 628–29. Whether some evidence could have supported a different finding is not the issue. That the ALJ clearly articulated a finding supported by substantial evidence suffices.

17

Finally, Price contends "the ALJ erred by focusing so heavily on the clinical examinations and objective findings because one of Plaintiff's severe impairments is fibromyalgia," "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Doc. 25 at 20–21 (quoting SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012)). The Acting Commissioner persuasively responds the ALJ appropriately considered Price's fibromyalgia. *See* Doc. 26 at 16–18 (Acting Commissioner's brief). While Price is correct that one of the "hallmarks" of fibromyalgia is a lack of objective medical findings, *see* Doc. 25 at 20 (quoting *Moore*, 405 F.3d at 1211), she is incorrect that the ALJ focused too heavily on the lack of objective medical findings. The ALJ considered other evidence, including Price's reports of improvement and working, traveling, and other activities.

Thus, Price's second argument fails.

The Court **affirms** the final decision of the Acting Commissioner of Social Security and **directs** the clerk to enter judgment in favor of the Acting Commissioner of Social Security and against Robin Price and close the file.

**Ordered** in Jacksonville, Florida, on March 29, 2022.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*